## U-Drive-It Co. v. Archer.

March 14, 1939.

William H. Field, Judge.

WOODWARD, DAWSON & HOBSON and HORACE H. ROTH for appellant.

TILFORD & WETHERBY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

The appellant and plaintiff below, U-Drive-It Company, is a corporation and conducts the business of renting automobiles to customers or renters under the "U-Drive-It" system, which is—that the customer or renter

takes the automobile from the garage of the owner and drives it himself or by servant in the use thereof, as stipulated in the rental contract. On September 5, 1936, the defendant and appellee, Mrs. V. C. Archer, signed a written contract with plaintiff whereby she for an indefinite period agreed to rent an automobile from it whenever she desired one for herself and family, one of whom was a daughter, Mary Jeanne Archer, who at that time was 15 years of age. The material parts of that contract to this litigation are: "In consideration of the established rates fixed by the company at the time of said rental, plus a service charge of thirty-five cents (35c) and of the mutual covenants of the parties hereto, the company agrees to rent to said renter, automobiles, each rental subject to all the terms, conditions, covenants and agreements of the parties hereinafter set forth and also as included in the 'trip slip' hereinafter defined. Upon each rental by said renter of an automobile, the said renter will sign a 'trip slip' describing the period of time, type of car and locality in which said car is to be used, and upon the execution of said 'trip slip' same is to be construed as part of this contract and included in the terms and provisions hereof. * * * The renter hereby assumes all liability for all damages or loss to the rented automobile or any part thereof, at the manufacturer's standard price for parts and labor, caused from collision with any movable or immovable object, or in any other manner, whether by the negligence of the renter or otherwise. The Company will not be liable for any repairs, purchase of parts or accessories made by or under the instructions of the renter unless such parts, accessories or repairs are specifically authorized by the Company."

Beginning with, and at various occasions following that date Mrs. Archer procured an automobile from plaintiff under the terms of the written contract and paid the mileage charges for the use of it when she returned it. On January 21, 1937, the daughter, Mary Jeanne Archer, appeared at the garage of defendant at about 8 A. M., and requested an automobile for her mother, pursuant to the original written contract signed by the latter, and which was in conformity with the method theretofore pursued when defendant desired the services contracted for. The daughter on that occasion, informed Mr. Harry Diehl, the general manager, not only that her mother wanted possession of an automobile on the terms of the contract, but that she was un-

willing to pay as compensation therefor more than five cents per mile for the use of it, which was one cent per mile less than she had theretofore paid. Mr. Diehl, at the request of the daughter, then called defendant over the telephone, and as a result of that conversation he agreed to exact and demand from her only five cents per mile for the automobile then applied for; whereupon the daughter signed the "trip slip," which in effect was a receipt for the automobile, and she then took it away. That "trip slip" registered the day upon which the automobile was taken, its make and number, and the number of miles traveled as shown on its speedometer, which was to be subtracted from the indicated miles when the automobile would be returned, and the difference would be the mileage upon which the rent charges were calculated.

The charges due for that particular trip amounted to $47.20; but, while the automobile was in possession of defendant, and while it was being driven by her daughter or some other member of her family it collided with another automobile on the highway and was greatly impaired, to such an extent that to supply the separate broken and injured parts would cost more than to dispose of it in the condition it was. Such disposition was made by plaintiff and it obtained from the purchaser the sum of $155, which, deducted from the undisputed proof of the value of the automobile before it was injured ($500) left the remainder of $345 as the damage sustained by plaintiff. That sum, with the mileage claimed, amounted to $392.20, which plaintiff sought to recover from defendant by this ordinary action filed against her in the Jefferson circuit court, based on the original rental contract.

At the close of plaintiff's testimony the court sustained defendant's motion for a peremptory instruction in her favor upon the ground that the contract alleged to have been breached by defendant was embodied exclusively in the "trip slip" signed by defendant's daughter and which was done without written authority from her mother, and that it was in violation of section 482 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, saying in part: "No person shall be bound as the surety of another by the act of an agent, unless the authority of the agent is in writing, signed by the principal," etc. A similar provision with reference to liability on negotiable instruments, as to all parties

thereto (principals and sureties) is contained in section 3720b-19 of the same statutes, which is a part of our Negotiable Instruments Act. In addition to those statutes section 470 of the same compilation (which contains our Statute of Frauds) Says that "No action shall be brought to charge any person * * * upon a promise to answer for the debt, default, or misdoing of another; * * * unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing, and signed by the party to be charged therewith, or by his authorized agent;" etc. So construing the exclusive contractual relationship between the parties to be embodied in the "trip slip" signed by the daughter of defendant on January 21, 1937, the trial court found that defendant had not authorized her daughter in writing to subscribe the "trip slip," although the proof showed uncontradictedly that she did agree and consent for the daughter to obtain the automobile from defendant on that particular occasion. Pursuing that theory the court found the only obligation breached was the one entered into with plaintiff by the defendant's daughter in her own name, the performance of which defendant attempted to guarantee, but without signing any writing to that effect. If the trial judge was correct in his conclusion as to what constituted the contract between the parties, then his conclusion of law would necessarily follow under numerous decisions of this court, many of which are found cited in the notes to the sections referred to. But we are thoroughly convinced that the trial court was in error in concluding that the particular "trip slip" signed by the daughter was the exclusive obligatory contract between the parties.

The real effect of, as well as the intention and purpose in requiring and obtaining the "trip slip" on each occasion of defendant's procuring an automobile, was to make a record of the time when a car was obtained, with a description of it, and the indicated number of miles that it had traveled when defendant procured it. It was in effect merely a receipt issued by defendant to plaintiff showing those facts, as well as the person to whom the automobile was actually delivered. The contract under which the automobiles were obtained from time to time by defendant from plaintiff was embodied in the original written contract signed by defendant, and which contained the terms of each successive rental of automobiles by her from plaintiff. She admittedly

signed the original contract with the inserted stipulations supra, contained in it, and which attached and became binding and operated upon each occasion that defendant obtained an automobile from plaintiff.

The fact that defendant procured a member of her family or any other agent to go to plaintiff and obtain custody and possession of an automobile for the particular occasion pursuant to the terms of the original contract was but the exercise of a privilege conferred thereby and the receipt (trip slip) given at the time could not and did not operate as a nullification of the original contract through the execution of the written receipt by the agent or member of defendant's family who actually procured the automobile from plaintiff, and which receipt the original contract designated as a "trip slip." The situation might be likened unto the purchase of merchandise or other material, to be delivered in quantities as needed by the purchaser, and which he obtained by sending agents and servants for the amount needed throughout a period of successive occasions for which the agent or servant would issue a receipt to the seller. It is too clear for argument that receipts so issued do not become the exclusive contract between the parties, as and when they are issued on each occasion when installments of the purchase are obtained.

The service of the U-Drive-It automobile—as desired and requested by defendant—was the thing contracted for by her, and the rights of the parties are to be determined as contained in the original contract until its legal termination or valid alteration. Neither termination nor alteration of it is even intimated in this record, much less relied on, and there is no room whatever—as we interpret the undisputed facts—for the application of any principle embodied in our statute of frauds, or any other statute.

Wherefore, for the reasons stated the appellant's motion for an appeal is sustained and the appeal is granted. The judgment is reversed, with directions to set it aside and to sustain the motion for a new trial, and for other proceedings consistent with this opinion.